UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

In Re

THOMAS MECHAM RICKS, | **Bankruptcy Case No. 09-00215-JDP**

Debtor.

_____

**MEMORANDUM OF DECISION**

_____

**Appearances:**

Brent T. Robinson, ROBINSON ANTHON & TRIBE, Rupert, Idaho, for Debtor.

R.C. Stone, PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, Burley, Idaho, for D.L. Evans Bank.

### Introduction

Debtor Thomas Ricks ("Debtor") filed for relief under chapter 11;[1] his case was later converted to a chapter 7 case. After the conversion,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

creditor D.L. Evans Bank ("Creditor") amended a previously filed proof of claim, bifurcating its claim into secured and unsecured components. Debtor objected to the amended proof of claim, arguing that, under applicable state law, Creditor could not have an unsecured claim without first completing a foreclosure on the real estate it held as security and prosecuting a state court deficiency action. The Court conducted a hearing on Debtor's objection on October 6, 2010, at the conclusion of which it allowed Creditor until October 15, 2010, to further amend its claim, provided a deadline of October 22, 2010, for any additional briefing, and took the issues raised by Debtor's objection under advisement. The Court has considered the record and submissions of the parties, the arguments of counsel, as well as the applicable law. This Memorandum constitutes the Court's findings of fact and conclusions of law, and resolves this contest. Fed. R. Bankr. P. 7052, 9014.

## Facts

Debtor filed a chapter 11 petition on January 29, 2009. Docket No. 1. During the chapter 11 case, Creditor filed a proof of claim for $1,162,847.98

MEMORANDUM OF DECISION - 2

on March 4, 2009. Claim No. 8-1. In the proof of claim, Creditor indicated that Debtor owed it a secured claim of $1,156,572.60, based upon a loan secured by a deed of trust covering two parcels of real property ("the Property"). *Id.* At the time, the Property was estimated by Creditor to have a value of $1,800,000. *Id.* Creditor also included a $6,275.38 unsecured claim for credit card debt in the initial proof of claim total amount. *Id.*

Debtor's case was converted to chapter 7 on June 18, 2010. Docket No. 156. On August 4, 2010, Creditor filed an amended proof of claim, which was amended again, by leave of the Court, on October 12, 2010 ("Amended Claim").[2] Claim Nos. 8-2, 8-3. A March 25, 2010, appraisal indicated that the Property's value had declined to $990,000. Claim No. 8-2 at 2–4. Per its Amended Claim, Creditor therefore asserted a secured claim for the $990,000 value of the Property, and a $175,858.19 unsecured

---

[2] The initial amended claim omitted from the "secured claim" the value of one of the two parcels securing Creditor's loan. *See* Claim 8-2. The Court granted Creditor leave to amend its proof of claim to include the value of both parcels as a secured claim. Hearing on Objection to Claim No. 8 (Oct. 6, 2010).

MEMORANDUM OF DECISION - 3

claim, $6,275.38 of which was for undisputed credit card debt, with the balance representing the undersecured portion of the outstanding loan. Claim No. 8-3; Oral Argument of Debtor at Hearing on Objection to Claim No. 8 (Oct. 6, 2010).

Debtor objected to Creditor's Amended claim, arguing that, under § 502(a), state law controls the allowed amount of Creditor's claim. *See* Memorandum in Support of Objection at 1–2, Docket No. 239. Debtor argues that, before any unsecured claim may be asserted in relation to a debt secured by real property, Idaho law requires completion of a state court deficiency action. *See id.* at 2–3.

**Discussion**

**A.**

Section 506(a)(1) of the Bankruptcy Code governs "determination of secured status" in a bankruptcy case. It provides that:

> An allowed claim of a creditor secured by a lien
> on property in which the estate has an interest, or
> that is subject to setoff under section 553 of this
> title, is a secured claim to the extent of the value

MEMORANDUM OF DECISION - 4

>of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 506(a)(1).  As can be seen, § 506(a)(1) of the Code allows for bifurcation of a creditor's claim in a bankruptcy case into a secured claim, to the extent of the value of a creditor's interest in a debtor's property, and into an unsecured claim for the portion of that claim that exceeds the value of the creditor's property interest.  § 506(a)(1).[3]  Importantly, however, bifurcation, is only available to a creditor that holds an "allowed" claim.  *Id.*

---

[3] Debtor did not object to the valuation of the Property in Creditor's amended proof of claim at $990,000.  Therefore, as explained in § 506(a)(1), if bifurcation is allowed, that amount represents the amount of Creditor's allowed secured claim.

MEMORANDUM OF DECISION - 5

Generally, a creditor's claim is deemed allowed upon its filing of a proof of claim unless a party in interest objects to the claim. § 502(a); *In re Fabos*, 03.1 I.B.C.R. 60, 61 (Bankr. D. Idaho 2003). A filed proof of claim is *prima facie* evidence that the amount of the claim is valid, and the burden of presenting evidence sufficient to overcome the *prima facie* validity rests on the party objecting to the proof of claim. Rule 3001(f); *Spencer v. Pugh* (*In re Pugh*), 157 B.R. 898, 901 (9th Cir. BAP 1993); *In re Fabos*, 03.1 I.B.C.R. at 61. If an objection is made, the bankruptcy court then determines and "allows" the amount of the claim as of the date when the bankruptcy petition was filed. § 502(b); *see In re Morrow*, 03.2 I.B.C.R. 100, 101 (Bankr. D. Idaho 2003). There are several exceptions to allowance, however, one of which occurs where a portion of a claim is unenforceable against a debtor, and his property, due to an agreement or applicable law. § 502(b)(1);[4] *Travelers Cas.*

---

[4] Section 502(b)(1) provides that:
(b) Except as provided in subsections (e)(2), (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to

MEMORANDUM OF DECISION - 6

*and Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449–50 (2007).

In such a case, the portion of the claim that is unenforceable under applicable law is not allowed. § 502(a), (b)(1).

As reflected in the legislative history of the Code, § 502(b)(1) was "intended to result in the disallowance of any claim for deficiency by an undersecured creditor on a nonrecourse loan or under a [s]tate antideficiency law . . . since neither the debtor personally, nor the property of the debtor is liable for such a deficiency." *CC Britain Equities, L.L.C., v. Allen-Main Assocs. Ltd. P'ship* (*In re Allen-Main Assocs. Ltd. P'Ship*), 223 B.R. 59, 63 (2d Cir. BAP 1998) (quoting 124 Cong. Rec. H 11093, H 11095, H 11110 (Sept. 28, 1978)). If a claim stems from a nonrecourse loan, where the amount of indebtedness exceeds the value of secured collateral, or is unenforceable because a state antideficiency statute prohibits recovery

---

      the extent that—
           (1) such claim is unenforceable against the debtor and
           property of the debtor, under any agreement or applicable
           law for a reason other than because such claim is contingent
           or unmatured[.]

MEMORANDUM OF DECISION - 7

from a debtor of a any amounts beyond the proceeds of a sale of collateral, that claim is unenforceable and not allowed.  *First Fed. Bank of California v. Weinstein* (*In re Weinstein*), 227 B.R. 284, 292 (9th Cir. BAP 1998) (undersecured creditor with a nonrecourse unsecured claim not entitled to distribution for unsecured claim in bankruptcy); *see In re Tolentino*, 2010 WL 1462772, *1–2 (Bankr. N.D. Cal. 2010) (antideficiency statute that completely prohibits deficiencies essentially makes loans nonrecourse).

**B.**

Here, neither the loan agreement between the parties, nor applicable law, render any portion of Creditor's claim unenforceable against Debtor.  First, the agreement between Debtor and Creditor does not state that any portion of the claim is unenforceable.  *See* Deed of Trust and Promissory Note, Claim No. 8-1 at 2–13, 15–17.  Indeed, there is no restriction in the agreement on the Creditor's ability to seek recovery against the Debtor or his assets after resort to the collateral to satisfy any remaining loan balance.  *Id.*  Therefore, under their contract, Creditor's claim for the entire amount

MEMORANDUM OF DECISION - 8

Case 09-00215-JDP    Doc 268    Filed 10/27/10    Entered 10/27/10 16:18:22    Desc Main
              Document      Page 9 of 14

owed under those documents is enforceable against not only the Property, but also against Debtor and his other assets.

Second, applicable law does not make any portion of Creditor's claim unenforceable. In this case, the applicable law referenced in § 502(b)(1) is Idaho law. *Travelers Cas. and Sur. Co.*, 549 U.S. at 450–51 (stating that bankruptcy courts are to consult state law in determining the validity of most claims); *In re Morrow*, 03.2 I.B.C.R. at 101. Idaho's deed of trust deficiency statute specifies that:

> At any time within 3 months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security, and in such action the plaintiff shall set forth in his complaint the entire amount of indebtedness which was secured by such deed of trust and the amount for which the same was sold and the fair market value at the date of sale, together with interest from such date of sale, costs of sale and attorney's fees. Before rendering judgment the court shall find the fair market value of the real property sold at the time of sale. The court may not render judgment for more than the amount by which the entire

MEMORANDUM OF DECISION - 9

> amount of indebtedness due at the time of sale exceeds the fair market value at that time, with interest from date of sale, but in no event may the judgment exceed the difference between the amount for which such property was sold and the entire amount of the indebtedness secured by the deed of trust.

Idaho Code § 45-1512.  In other words, Idaho's statute does not prohibit deficiencies, but, rather, allows the recovery of a deficiency by a creditor after foreclosure and sale of real property subject to a deed of trust.  *Id.*  In those cases where a deficiency is sought, the statute prescribes the manner in which a state court deficiency action may be brought, and how deficiency amounts are determined.  *Id.*

The Court acknowledges that, under this statute, hypothetically, there may be situations in which a creditor is prevented from enforcing the entire amount of its claim.  For example, if real estate collateral is sold for less than the property's fair market value, a creditor's deficiency would be restricted to the difference between the property's fair market value and the total amount of indebtedness.  *See* Idaho Code § 45-1512; *Wilhelm v.*

MEMORANDUM OF DECISION - 10

*Johnson*, 30 P.3d 300, 304 (Idaho Ct. App. 2001). Under those facts, a creditor would not be able to recover the additional difference between the below-market-value sale price and the fair market value of the property. *See* Idaho Code § 45-1512; *Wilhelm v. Johnson*, 30 P.3d at 304.

Still, merely because a scenario can be hypothesized in which a creditor may not be able to enforce a portion of its claim via a deficiency does mean that Creditor's claim in this case should be disallowed under § 502(b)(1). Section 502(b)(1) requires a determination of the allowance and amount of a claim "as of the date of the filing of the petition." *In re Fabos*, 03.1 I.B.C.R. at 61. Idaho's deficiency statute requires a sale under a deed of trust within three months prior to a deficiency action. Idaho Code § 45-1512. A creditor must then file a complaint referring to the sale in order to properly initiate a deficiency action. *Id.* Here, when Debtor's bankruptcy petition was filed, there had been no foreclosure sale on Creditor's deed of trust on the Property, no deficiency action, and no determination by the state court that any portion of the claim was unenforceable. Simply put, in

MEMORANDUM OF DECISION - 11

this case, Idaho's deficiency statute did not render Creditor's claim unenforceable as of the date of Debtor's petition because none of the prerequisites for a deficiency determination had occurred at that time.[5]

Accordingly, the Court concludes that, as of the date of Debtor's petition, no part of Creditor's claim was rendered unenforceable by Idaho's law, and, per § 502(b), Creditor's entire claim for $1,165,858.19 is allowed.[6]

## C.

Having determined that Creditor's claim is allowed under § 502, bifurcation is therefore appropriate under § 506(a). Section 506(a) bifurcation is allowed in chapter 7 cases, and creditors are not required to

---

[5] The same conclusion would result if analyzing Idaho's mortgage foreclosure and deficiency statutes, which contain prerequisites of a court-directed sale, analysis of a sheriff's return, and docketing of a deficiency judgment. Idaho Code §§ 6-101, 6-108. None of those prerequisites occurred as of the date of Debtor's petition.

[6] Any other finding would result in requiring all creditors making a claim on undersecured property to proceed through a foreclosure and Idaho deficiency action prior to classifying an unsecured portion of a claim as "allowed."

first obtain a non-bankruptcy deficiency judgment in order to bifurcate a claim into secured and unsecured parts. § 103(a) (providing that the provisions of chapter 5 of the Code apply in cases under chapter 7); *Dewsnup v. Timm*, 502 U.S. 410, 413 (1992) (recognizing that § 506(a) bifurcation may occur in a chapter 7 case); *see, e.g., In re Gangestad*, 358 B.R. 394, 396 (Bankr. D. Or. 2006) (quoting *In re Costello*, 184 B.R. 166, 171 (Bankr. M.D. Fla. 1995)) ("[In] a Chapter 7 case, '[t]here is no requirement that the creditor first obtain a deficiency judgment in the non-bankruptcy forum as a prerequisite for bifurcating a claim into a secured and unsecured part.'"). Creditor's bifurcation of its claim into secured and unsecured claims was, therefore, appropriate.

Debtor's argument that, absent liquidation of the Property via a deed of trust foreclosure sale, Creditor has no allowed unsecured claim, lacks merit.

## Conclusion

MEMORANDUM OF DECISION - 13

Under § 502(a), Creditor's claim of $1,165,858.19 is an allowed claim. Bifurcation of that claim into secured and unsecured components, based upon the value of the Property, is therefore appropriate under § 506(a)(1).[7]

Debtor's objection to Creditor's claim will be denied in a separate order.

Dated: October 27, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[7] While this is a chapter 7 case, had Debtor's theory been correct that bifurcation was not available to Creditor under § 506(a) and Idaho law, the implications for debtors attempting to reorganize their debts secured by trust deeds in plans in chapters 11, 12, and 13 cases would have been earth-shaking. Effectively, since Debtor was invoking Code provisions that, under § 103(a), also apply in the reorganization chapters, his theory would have prevented debtors from proposing to "cram down" most real estate secured debt. Absent a clear expression of such intent from Congress, the Court is unwilling to hamstring reorganizing debtors in such fashion.

MEMORANDUM OF DECISION - 14